## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:
HOWARD AVENUE STATION, LLC,

     Debtor.

_____/

HOWARD AVENUE STATION, LLC
and THOMAS ORTIZ,

     Appellants,

v.

                                     Case No. 8:23-cv-02346-TPB
                                     Bankr. No. 8:12-bk-08821-CPM
THE DUBLINER, INC., RICHARD          Adv. Pro. No. 8:12-ap-00935-CPM
CAMPION, and FRANK R. KANE

     Appellees.

_____/

## ORDER AFFIRMING BANKRUPTCY
## COURT'S FINAL JUDGMENT

This matter is before the Court on appeal from the bankruptcy court's

September 25, 2023, "Final Judgment as to Count I of Plaintiff's Complaint and

Count II of Frank Kane's Counterclaim" (Doc. 2-2).  The appeal is fully briefed.

After reviewing the parties' briefs, the court file, and the record, the court finds as

follows:

## Background

### *The Leases and the Disputed Area*

This case arises from a long-standing dispute over a portion of a courtyard

lying between two commercial buildings located on adjacent lots at the northwest

corner of Azeele Street and Howard Avenue in Tampa, Florida.  Appellee Frank Kane owns both lots and rents space in the buildings to commercial tenants. Appellants Howard Avenue Station, LLC ("HAS") and Thomas Ortiz (HAS's principal) lease the downstairs units of the building that is located directly on the corner of the intersection (the "Howard Avenue building") under a written lease entered into on July 20, 2009 (the "HAS Lease").  These downstairs units have the addresses 309, 311, 315, and 317 South Howard Avenue.[1]  Appellee The Dubliner, Inc., leases the downstairs portion of the other building, located on the lot immediately to the west at 2307 West Azeele Street (the "Azeele Street building"). The Dubliner has used this space to operate an Irish pub originally under a written lease entered into in 2002 (the "Dubliner Lease"), and then upon its expiration in 2012 under an oral month-to-month extension of that lease.

A courtyard lies between the two buildings.  HAS occupies the eastern portion of this courtyard towards Howard Avenue, from the Howard Avenue building out to a wooden wall that has been in place since before The Dubliner or HAS leased their respective spaces.  From the time The Dubliner leased the downstairs units of the Azeele building in 2002, it has occupied the remainder of the courtyard, extending from the restaurant on the west side up to the wooden wall on the east and has used the area for outdoor seating for the restaurant.  Within a few years of entering into the lease, The Dubliner completed construction of an elevated

---

[1] The HAS Lease refers to "313" rather than "315" South Howard Avenue, but it was determined in litigation between the parties that this was a scrivener's error and the lease was reformed to reflect the proper address, 315.  The HAS Lease also lets the upstairs portion of the Azeele Street building to HAS and Ortiz.

wooden deck extending into this area.  The deck has since been removed, but The Dubliner has continued to use the paved space for seating.  Appellants contend that a twelve-foot strip of this courtyard area being occupied by The Dubliner on the east side ending at the wooden wall (the "disputed area") was, in fact, leased to Appellants in 2009 under the 2009 HAS Lease.  HAS's adversary complaint for turnover seeks to recover the use of this space as property of the bankruptcy estate.  Appellees contend that the disputed area is not within the scope of the HAS Lease.

### *The 2007 State Court Litigation*

The parties have been fighting and litigating over rights to the disputed area (among other issues) for over a decade.  Because the course and outcome of prior litigation bear on the current dispute, it is necessary to describe those proceedings.

As noted above The Dubliner leased its space and started using the courtyard, including the disputed area, in 2002.  Ortiz and HAS entered the picture a few years later when Kane approached Ortiz about selling various properties to Ortiz.  In 2006, Kane as landlord and HAS as tenant entered into a "Master Commercial Lease" (the "Master Lease") and into a separate option agreement giving HAS the option to purchase the leased properties.  The Master Lease defined what was leased to HAS by means of a legal description of the leased properties attached as an exhibit to the lease, and the description included the parcels on which both the Howard building and the Azeele building sit.

Because the Master Lease covered both the Howard Avenue and Azeele Street properties, and therefore overlapped with existing leases, the Master Lease expressly stated that it was subject to existing tenant leases, including the Dubliner

Lease. The Dubliner Lease would have expired in 2007, giving HAS the right to possess all of The Dubliner's space at that point. However, in June 2006, The Dubliner exercised its option to renew its lease for another five years, which meant that HAS's Master Lease would remain subject to The Dubliner's rights as tenant for another five years as well.

This situation set the stage for a dispute over two questions: (1) whether the Dubliner Lease had been validly renewed until 2012 and (2) whether it covered the disputed area. The Dubliner contended the answer to both question was yes. Kane and HAS disagreed and argued the Dubliner Lease had not been validly renewed and, in any event, did not include the disputed area. Instead, Kane contended that area was leased to The Dubliner under a separate, oral, month to month lease. If Kane's view were correct, even if the Dubliner Lease itself had been renewed, Kane could terminate the month-to-month lease for the disputed area, in which case HAS would become entitled to possession of that space under its Master Lease.

The Dubliner filed an action in state court in 2007 against HAS, Ortiz, and Kane seeking a declaratory judgment on these two issues. On March 4, 2008, following a trial, Circuit Judge Ralph Stoddard ruled in favor of The Dubliner on both issues, finding both that the 2002 Dubliner Lease encompassed the disputed area and that The Dubliner had effectively renewed the lease, for an additional five years that commenced on August 15, 2007. A partial final judgment reflecting these findings was entered in that case in July 2008 and final judgment was entered on May 24, 2009.

*The 2009 HAS Lease*

Meanwhile, the relationship between Kane and his tenants Ortiz and HAS deteriorated, and the situation was resolved in in July 2009 by a new set of agreements.  The parties terminated the Master Lease and entered into the HAS Lease, which contrasted with the Master Lease in several important respects.  First, instead of leasing the entirety of both parcels, Kane leased only the downstairs units of the Howard building and the upstairs of the Azeele building to HAS.  Second, the HAS Lease described the space leased to HAS only in terms of discrete addresses for units in the Howard Avenue building, rather than by a legal description covering the entire parcel.  Finally, the HAS Lease said nothing about other existing leases or the disputed area.

Thus, Section 1 of the HAS Lease, titled "Basic Lease Provisions," defined "demised premises" solely in terms of addresses for units of the Howard Avenue building and the upstairs of the Azeele Street building:

> Demised Premises:  Collectively the upstairs portion of 2307 Azeele Street, Tampa, Florida 33609, and 309, 311, 313, 317 South Howard Avenue, Tampa, Florida 33606.[2]

The same section defined "Buildings and exterior space" by reference to an attached photograph:

> Buildings and exterior space: see Composite Exhibit "A" which includes a photograph of the fenced off area and storage unit in the rear of the Howard Avenue bldg. to be included as part of the Demised Premises.

Composite Exhibit A consisted of a photo that did not include the disputed area.

---

[2] As noted above, the HAS Lease as written refers to the 313 unit, but in a prior adversary proceeding, the lease was reformed to replace 313 with 315, to correct a scrivener's error.

Section 2 of the lease, titled "Demised Premises and Term," provides that the landlord:

> hereby leases, lets and demises to the Tenant and Tenant hereby leases and hires from Landlord the Demised Premises, more particularly described in Composite Exhibit "A" (sketch).

Although this lease provision references a "sketch," no sketch was no attached to the lease.

### *The Adversary Proceeding (Round One)*

On June 6, 2012, HAS filed for bankruptcy protection.  In August, 2012, The Dubliner's written lease with Kane expired.  Kane continued to lease the bottom floor of the Azeele Street property to The Dubliner via an oral month-to-month extension, pursuant to which The Dubliner continued to occupy the western part of the courtyard, including the disputed area.  On October 10, 2012, HAS commenced this adversary proceeding against The Dubliner and its principal Richard Campion. HAS's complaint sought turnover of disputed area as property of the bankruptcy estate, alleging it was entitled to possess the disputed area under the 2009 HAS Lease.  Kane intervened as a defendant and filed a counterclaim seeking a declaration that the HAS Lease did not provide HAS any rights of occupancy or possession with respect to the disputed area.[3]  HAS's principal, Ortiz, was later also made a party to the adversary proceeding on HAS's side.

Kane moved for summary judgment.  The bankruptcy court granted the motion and entered a final judgment on Count I of the adversary complaint against

---

[3] Kane's counterclaim included a second count for tortious interference.  The bankruptcy court resolved this claim in favor of Ortiz, and Kane has not appealed that ruling.

HAS based on collateral estoppel, holding that Judge Stoddard's earlier ruling in the state court proceeding that The Dubliner had the right to possess the disputed area precluded HAS's claim in the adversary proceeding.

### The Prior Appeal

On appeal, the district court reversed, ruling that the requirements for collateral estoppel were not met.  *See In re Howard Ave. Station, LLC*, No. 8:12-BK-08821-CPM, 2022 WL 4377506 (M.D. Fla. Sept. 22, 2022).   In particular, Judge Honeywell ruled that the issue litigated in the state court proceeding and the issue being litigated in the adversary proceeding were not the same. *Id*. at *10-14.   The issue in the state court proceeding on which Judge Stoddard ruled was the interpretation of the 2002 Dubliner Lease, and whether it included the disputed area.  *Id*. at *13.  The issue in the adversary proceeding is the interpretation of the 2009 HAS Lease, which did not even exist when Judge Stoddard issued his ruling. *Id*.  Thus, as Judge Honeywell stated in the prior appeal:

> [T]he current proceeding turns on the parties' intent when signing the 2009 HAS Lease with respect to the anticipated expiration of the Dubliner lease. The signing of the 2009 HAS Lease and the expiration of the written Dubliner lease materially alter the legal question that was before Judge Stoddard, thereby creating a new legal situation. Moreover, the factual question of the parties' intent in 2009 requires different evidence than what was presented in state court.

*Id*. (citations omitted).  Accordingly, the state court ruling, as a matter of law, did not preclude a factual finding regarding a subsequent event, the HAS Lease.  *Id*. at *14.  Judge Honeywell therefore reversed the summary judgment based on collateral estoppel and remanded the case to the bankruptcy court.

At the same time, Judge Honeywell emphasized that, given Kane's and HAS's knowledge of Judge Stoddard's 2008 ruling that the disputed area was within the 2002 Dubliner Lease, their failure to expressly reference the disputed area in HAS Lease in 2009 strongly support a conclusion that they did not intend to include it.  In other words, "knowing Judge Stoddard's prior ruling, had anyone that is a party to the HAS lease intended to include the deck area, they would have easily expressly included it within the description of the demised premises."  *Id*. at *14 (internal quotation and ellipsis omitted).  Judge Honeywell concluded that "Judge Stoddard's ruling provides persuasive – perhaps even dispositive – evidence against HAS's argument that the parties intended to include the deck area in the 2009 HAS Lease."  *Id*.  This issue, however, was a matter for fact-finding regarding the parties' intent with respect to the HAS Lease, rather than a ground for summary judgment based on collateral estoppel.  *Id*.

### *The Adversary Proceeding (Round Two)*

Following remand, the bankruptcy court held a three-day bench trial to determine the parties' intent with respect to the HAS Lease.  Appellants HAS and Ortiz presented testimony from Kane and Ortiz during their case-in-chief.  At the close of HAS and Ortiz's case in chief, Kane and The Dubliner filed a Rule 52(c) motion for judgment on partial findings.  They argued that the HAS Lease was unambiguous and did not cover the disputed area, or, if there was any ambiguity, HAS had failed to present extrinsic evidence to prove the lease covered the area.

The bankruptcy court reserved ruling on the motion pending the presentation of all evidence.  The court indicated that it wanted to hear further from Kane on the

question of his intent with respect to the leases at issue.  The court also noted that Section 2 of the HAS Lease referenced a sketch of the "demised premises," but no such sketch was attached and none of the witnesses had testified about it. Accordingly, the court wished to hear from Kane on that issue as well.   The court explained that the absence of the sketch defining what was leased created an ambiguity, and that "[t]he crucial issue of fact is the parties' . . . intent that the court must ferret out by resort to extrinsic evidence."

The Dubliner and Kane presented their case, including testimony by Kane that he considered the disputed area to be part of the parcel at 2307 West Azeele and has always leased it along with that parcel.  He said he never would have leased it any other way given the configuration of the units.  Although his memory was not clear on why the sketch was not attached, he testified that the sketch would not have included the disputed area occupied by The Dubliner.

After this evidence and further legal argument, the bankruptcy court granted the Appellees' Rule 52(c) motion for judgment in their favor on Appellants' complaint for turnover of estate property, concluding that the disputed area was not covered by the HAS Lease.   The court based its conclusions on Kane's testimony, which the court found credible, on the long-standing historical use of the disputed area by The Dubliner, and on the language of the HAS Lease read in light of the surrounding circumstances including the previous Master Lease and Judge Stoddard's ruling in state court that the Dubliner Lease included the disputed area.

Appellants requested the opportunity to present additional evidence to counter Kane's testimony regarding the sketch in rebuttal and in defense of Kane's

counterclaim for declaratory judgment.  They argued that Ortiz would testify that Kane told Ortiz a sketch was not needed because the addresses listed in the lease were sufficient.  The bankruptcy court denied the request, noting that Appellants should have presented evidence on this point during their case-in-chief and that such evidence would not resolve the ambiguity as to the scope of the HAS Lease.

As the counterclaim essentially sought a declaration that Appellants were entitled to no relief on their complaint, and as the court had already determined that no relief would be awarded on that complaint, the issue on the complaint and the counterclaim were the same and no further proceedings were necessary.  The court therefore ruled in favor of Appellees on their declaratory judgment counterclaim as well.

Ortiz and HAS appealed.  Appellants originally filed two separate notices of appeal, initiating two different appeals.  The Court consolidated the two appeals into this case on January 23, 2024.  (Doc. 10).

## **Standard of Review**

The district court functions as an appellate court when reviewing final judgments and certain interlocutory orders and decrees of a bankruptcy court.  *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994); 28 U.S.C. § 158(a).  "Legal conclusions of the bankruptcy court are reviewed *de novo* . . . ." *Bunyan v. Remick*, No. 8:18-cv-1519-T-36, 2019 WL 4805428, at *2 (M.D. Fla. Oct. 1, 2019) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009)).  "The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous . . . ." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996).  A factual

finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation omitted).  A finding is not "clearly erroneous" when the lower court's assessment of the evidence is "plausible in light of the record viewed in its entirety." *Id.* at 573-74.  "[T]he reviewing court may affirm the Bankruptcy Court's decision on any basis supported by the record." *In re Ford*, No. 8:19-cv-02724-MSS, 2020 WL 13349093, at *4 (M.D. Fla. Aug. 3, 2020) (quoting *In re Raymond & Assoc., LLC*, No. 19-01086-KD-MU, 2020 WL 3073005, at *19 (S.D. Ala. June 10, 2020)).

## Analysis

### *Appellants Were Fully Heard.*

Appellants argue the bankruptcy court erred by not permitting them to present evidence to counter Kane's testimony about the missing sketch before granting Appellees' Rule 52(c) motion for judgment on partial findings.[4]  This argument is not well-taken, and borders on frivolous.

Federal Rule of Civil Procedure 52(c) allows a court to enter judgment against a party at any time where the party has been "fully heard" on an issue on which the party must prevail in order to succeed, and the court finds against the party on that issue.  Fed. R. Civ. P. 52(c) & adv. comm. notes, 1991 amend.[5]  "The

---

[4] Appellants H.A.S. and Ortiz have filed separate briefs, but their arguments largely overlap.  The Court will therefore refer to arguments raised by either Appellant as having been made by "Appellants" generally unless there is a reason to distinguish between the two.

[5] Rule 52(c) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7052.

requirement that a party must first be 'fully heard' does not, however, amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence.  In this respect, it is within the discretion of the trial court to enter a judgment on partial findings even though a party has represented that it can adduce further evidence, if under the circumstances, the court determines that the evidence will have little or no probative value." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 n.21 (3d Cir. 2010) (internal quotation omitted).

Bankruptcy courts also have broad discretion regarding management of trial. This includes control over the order of presentation of evidence and managing trial to prevent wasting time, undue delay, and the needless presentation of cumulative evidence. *See* Fed. R. Evid. 611(a); Fed.R. Evid. 403.[6]  In particular, whether to allow rebuttal evidence lies within the sound discretion of the bankruptcy court. *See, e.g.*, *In re Daprizio*, 365 B.R. 268, 278 (Bankr. S.D. Fla. 2007).  This discretion encompasses the determination whether information should be permitted in rebuttal when it could have been submitted as part of the case in chief. *See United States v. Sadler*, 488 F.2d 434, 435 (5th Cir. 1974).

As the bankruptcy court noted, Appellants had presented their entire case-in-chief by the time the court ruled on the Rule 52(c) motion.  Appellants had called both Ortiz and Kane as witnesses but chose not to question them about the missing

---

[6] The Federal Rules of Evidence apply in bankruptcy proceedings.  Fed. R. Evid. 1101.  The provisions of 403 for excluding evidence as cumulative or as a waste of time apply to bench trials as well as jury trials.  *See Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981).

sketch referred to in the HAS Lease. Appellants also cross-examined Kane on this issue during his testimony in Appellees' case. Under these circumstances, they were therefore "fully heard" on the issue of the proper interpretation of the HAS Lease, including the relevance of the missing sketch.

Furthermore, Ortiz's proffered testimony would have had little or no probative value on the determinative question of the parties' intent. Ortiz proposed to testify that in a meeting prior to entering the HAS Lease the parties agreed or at least discussed that a sketch was not needed "because the addresses would suffice." As the bankruptcy court explained, even if the parties had agreed the sketch was not necessary due to the inclusion of the addresses, that would not support HAS's and Ortiz's reading of the lease. The absence of the sketch was only "relevant" in the sense that it created an ambiguity, an ambiguity resolved by the court's consideration of other evidence regarding the parties' intent.

Nor was the court required to hear additional evidence in order to rule on Appellees' counterclaim for declaratory judgment, since as the bankruptcy court observed, the issues were "exactly overlapping," i.e., on both claims the issue was whether the HAS Lease included the disputed area. The bankruptcy court did not err in declining to allow Appellants to present further evidence to rebut Kane's testimony.

### The Bankruptcy Court Correctly Ruled the HAS Lease Was Ambiguous.

Appellants argue the HAS Lease unambiguously encompassed the disputed area, and the bankruptcy court therefore erred in ruling the lease to be ambiguous

and considering extrinsic evidence as to the parties' intent. Appellants' argument is without merit.

First, Section 1 of the lease describes the "Demised Premises," in relevant part, by reference to the street addresses of the downstairs units of the Howard Avenue building. It is not clear from this reference that the lease includes the disputed area because a description of leased premises by a street number does not necessarily include the entire lot associated with the address. *See In re Ranch House Motor Inn Int'l, Inc.*, 335 B.R. 894, 898 (Bankr. M.D. Fla 2006). Instead, it includes "as much of the lot upon which the building situated is as necessary for the purpose for which it was let." *Id.* Determining how much of the lot is necessary requires examination of extrinsic evidence. *See id.* at 898-99, 904-05; *see also W. World, Inc. v. Dansby*, 566 So. 2d 866, 868 (Fla. 1st DCA 1990); *S. S. Jacobs Co. v. Weyrick*, 164 So. 2d 246, 249 (Fla. 1st DCA 1964).

Appellants cite *Bajrangi v. Magnethel Enterprises.*, 589 So. 2d 416 (Fla. 5th DCA 1991), which upheld the validity of an option agreement that described the subject property by means of a street address. But that case held that a general description (such as by street address) in a conveyance is sufficient if it shows that a particular parcel was intended and that the precise contours may be determined by extrinsic evidence. *Id.* at 418-19; *Ranch House*, 335 B.R. at 906-07 (discussing *Baranji*). It did not hold that such a description renders the conveyance unambiguous and precludes extrinsic evidence. *Mendelson v. Great Western Bank, F.S.B.*, 712 So. 2d 1194, 1197 (Fla. 2d DCA 1998), also cited by Appellants, merely

recites the holding of *Bajranji*, but did not itself involve a description by means of a street address.

Second, Section 1 of the lease also appears to define or describe "Buildings and exterior space" by reference to Composite Exhibit A to the lease, which consisted of a photo that displayed only the storage unit and fenced off area in the rear of the Howard building and did not show the disputed twelve feet of space.[7] Appellants argue that both Kane and Ortiz testified at trial that photograph was only intended showed a portion of the Azeele Street property that was being *added* to the exterior area covered by the HAS Lease. But this misses the point. The testimony constitutes extrinsic evidence that might in part clarify the ambiguity; it cannot establish the lease itself was unambiguous as to the disputed area. *See Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1214-15 (M.D. Fla. 2007) ("[U]nder Florida law, the Court must first look at the words used on the face of the contract to determine whether the contract is ambiguous."). Additionally, the testimony shows only that a different portion of the Azeele Street property was included in the HAS Lease; it does not demonstrate that the disputed area was included.

Third, Section 2 of the lease states the "Demised Premises" are "more particularly described in Composite Exhibit A (sketch)." This sketch was never

---

[7] Appellants assert that the lease "unambiguously identifies the premises to be let as the buildings and exterior space of the Howard Parcel," but this is incorrect. The HAS lease describes the "Demised Premises" in terms of the addresses and by reference to the missing sketch, discussed below. The function of the reference to "Buildings and exterior space" is unclear except to indicate that the area shown in the photo is included within the Demised Premises.

attached to the lease.  The absence of the sketch by itself creates an ambiguity requiring resort to extrinsic evidence.  *See Ranch House*, 335 B.R. at 903-04 (lease was ambiguous where it referred to an attached sketch, but no sketch was ever created or attached).

Appellants argue that any potential ambiguity is cured by a provision in the HAS Lease that HAS would pay 60% of ad valorem property taxes for the downstairs portion of the Howard Avenue building and 40% of the taxes for the upstairs portion of the Azeele Street building.  "These distinctions make no sense," HAS argues, "unless the ground level exterior is included in the lease."  But HAS offers no explanation why that is so.  As the bankruptcy court observed, the parties were free to negotiate whatever allocation of taxes they desired.

Finally, Appellants argue that the parties' Joint Stipulation of Facts entered prior to trial somehow demonstrates that the HAS Lease unambiguously included the disputed area.  It does not.  It simply refers to the space leased by HAS by reference to the addresses of the downstairs units of the Howard Avenue building, as does the HAS Lease.

In short, the bankruptcy court did not err when it concluded that the HAS Lease was ambiguous and considered extrinsic evidence of the parties' intent.[8]

---

[8] Ortiz in his briefs essentially assumes the HAS Lease is unambiguous rather than developing an argument that it is.  Also, contrary to Ortiz's argument, the bankruptcy court clearly ruled the lease was ambiguous.  *See* (Doc. 2-303 at 172, 180).  Ortiz argues the bankruptcy court did not expressly state this ruling at the same time it recited its other findings and conclusions.  However, the precise point during the proceedings when the court expressed its ruling is irrelevant because it does not affect whether this Court has a sufficient basis for review.  *See Ryan v. Aina*, 222 F. App'x 801, 805 (11th Cir. 2006).

***The Bankruptcy Court's Finding as to the Parties' Intent
was Not Clearly Erroneous.***

Appellants argue that the bankruptcy court erred in finding that the parties did not intend to include the disputed area in the HAS Lease. The bankruptcy court's findings, however, were supported by substantial evidence and were not clearly erroneous.

First, the court found Kane's testimony that he did not intend the disputed area to be included in the 2009 lease to Appellants more credible that Ortiz's testimony. Determining credibility and assigning weight to the testimony of live witnesses is the province of the trial court. *See, e.g.*, *In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014) ("[W]hen we examine the facts adduced at trial, generally we will not disturb a bankruptcy court's credibility determinations.").

Second, the bankruptcy court was persuaded by the historical use of the disputed area. From the time that The Dubliner leased its space in 2002 up to the time when Kane and Ortiz were negotiating the HAS Lease in 2009, the Dubliner had used the disputed area up to the wooden wall under a written lease that would not expire until 2012. And the Dubliner's deck extending into the disputed area was in place in 2009 when Kane entered into the HAS Lease with HAS and Ortiz.

Third, Kane and Ortiz entered the HAS Lease when Judge Stoddard had just the year before ruled in the state court proceeding that The Dubliner had the right to possess the disputed area under its 2002 lease, and final judgment had been entered in that proceeding just a few months earlier. Yet in negotiating the HAS Lease, Ortiz never sought the inclusion of any language in the lease to bring this

area within the scope of its new lease.  As Judge Honeywell had indicated in the prior appeal, the absence of any express reference to the disputed area in the HAS Lease provides persuasive if not dispositive evidence that the disputed area was not intended to be included.  Moreover, if the parties had intended to include the disputed area in the HAS Lease, when the state court had already determined it to be within the Dubliner Lease, in other words if the two leases covered the same area, the parties logically would have expressly made the HAS Lease subject to the Dubliner Lease, similar to the provisions in the (now terminated) Master Lease. But they did not.

Appellants argue that the bankruptcy court ignored contrary evidence, including the division of ad valorem taxes, the testimony regarding the purpose of the photograph and other matters.  They fail to demonstrate that the bankruptcy court ignored any evidence.  Instead, the court weighed all the evidence and reached a conclusion with which Appellants disagree.  In short, "[t]here is sufficient evidence in the record to support the bankruptcy court's findings, and [i]t is not this Court's role to retry the case or to weigh the evidence as it sees fit." *Coady v. D.A.N. Joint Venture, L.P.*, No. 08-81332-CIV, 2009 WL 9041189, at *8 (S.D. Fla. Apr. 1, 2009), *aff'd sub nom. In re Coady*, 588 F.3d 1312 (11th Cir. 2009) (quotation omitted).

Based on all of the foregoing, the bankruptcy court concluded "the evidence is quite clear that the intent of the parties was that the courtyard deck was not involved in the lease of the Howard Building whatsoever."  The court's weighing of this evidence on this point was not clearly erroneous.

**The Bankruptcy Court Did Not Impose an Improper Burden on Appellants**

Appellants argue the bankruptcy court placed a "burden" on them to include clarifying language in the lease regarding the disputed area when it should have placed the burden on Kane as the drafter of the lease to expressly exclude the disputed area.  Read in context, the bankruptcy court's reference to a "burden" on Appellants reflected only the commonsense notion that, given the prior dispute, and Judge Stoddard's earlier ruling, and other circumstances, any failure to place language in the 2009 HAS Lease that covered the disputed area would constitute compelling evidence that it was not intended to be covered, as Judge Honeywell recognized in the prior appeal.  As for construing a document against the drafter, that is a "rule of last resort and is inapplicable when there is evidence of the parties' intent at the time they entered into the contract."  *DSL Internet Corp. v. TigerDirect, Inc.*, 907 So. 2d 1203, 1205 (Fla. 3d DCA 2005).  The bankruptcy court drew on ample evidence of the parties' intent, rendering the rule of *contra proferentem* irrelevant.

**The Bankruptcy Court Did Not Misapply Judge Stoddard's Ruling.**

Appellants also argue that the bankruptcy court improperly gave Judge Stoddard's ruling preclusive effect, or misinterpreted that ruling as forever assigning the disputed area to the Azeele building.  However, the bankruptcy court did not do that.  The court considered the fact that the parties were aware of Judge Stoddard's ruling at the time they entered the HAS Lease as part of the surrounding facts and circumstances from which the court gleaned the parties' intent.  This was perfectly proper.  *See, e.g., Waveblast Watersports II Inc. v. UH-*

*Pompano, LLC*, 291 So. 3d 657, 661 (Fla. 4th DCA 2020) (holding that where a contract is ambiguous the court may consider extrinsic evidence including the circumstances surrounding its making).

***The Bankruptcy Court Did Not Improperly "Reform" the HAS Lease.***

Ortiz also devotes much of his brief to arguing the bankruptcy court engaged in a "reformation" of the lease, which he argues was improper for various reasons. But it is clear from the record as a whole that the court did not reform the lease. It found the lease to be ambiguous and interpreted it based on evidence as to the parties' intent.

## Conclusion

The bankruptcy court did not err in its interpretation of the HAS Lease or in entering judgment for The Dubliner and Kane. The court correctly concluded the HAS Lease was ambiguous and appropriately considered extrinsic evidence to deduce its meaning. After weighing the available evidence, the court concluded that the parties did not intend to include the disputed area in the lease. This conclusion was not clearly erroneous. The judgment of the bankruptcy court is therefore affirmed.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. The bankruptcy court's "Final Judgment as to Count I of Plaintiff's Complaint and Count II of Frank Kane's Counterclaim" (Doc. 2-2) is **AFFIRMED**.

2. The Clerk is directed to transmit a copy of this Order to the bankruptcy

court, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of

September, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**